IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN DIAZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:12-cv-1168-MJR-DGW |
| | ) |
| SHANE CHILDERS, MICHAEL DURBIN, | ) |
| HAROLD SCHULER, ROBERT | ) |
| THORNTON, RANDY VALDEZ, R CLARK, | ) |
| ARNEZ, and DAVIES, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion be **GRANTED**, that summary judgment be granted in favor of Defendants Childers, Durbin, Schuler, Thornton and Valdez[1] and against Plaintiff, and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

In a January 14, 2013 Order pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on a claim that the eight Defendants identified above allowed and encouraged Plaintiff

---

[1] Defendants Clark, Arnez, and Davies have not been served in this matter as of the date of this Report and Recommendation.

to fight with other inmates while he was incarcerated at the Big Muddy Correctional Center in the Spring of 2011 (Doc. 10).[2] Defendants Childers, Durbin, Schuler, Thornton and Valdez now seek summary judgment on the issue of whether Plaintiff exhausted his administrative remedies. Plaintiff filed a response (Doc. 44) and a hearing was held on the issue on December 3, 2013.

Plaintiff alleged in his Complaint that Defendant Childers "forced me into fighting my cellmates by threatening to kill my mother;" that Defendant Valdez encouraged other inmates to fight with him; that Defendants Arnez and Thornton "stood guard" while Plaintiff fought his cellmate and didn't stop the fight (and in fact encouraged it); that Defendants Clark and Schuler also stood by, watched Plaintiff fight his cellmate, and encouraged him to join a gang; that Defendant Dubin "would make phone call" to someone "in organized crime" when Plaintiff engaged in fighting; and, that Defendant Davies "helped in hiding weapons that were provided to inmates" hoping to riot.[3]

Plaintiff claims that he submitted two grievances: on March 20, 2011 (while he was incarcerated at Big Muddy) and February 13, 2012 (while he was incarcerated at Pontiac Correctional Center) (Doc. 44). Plaintiff asserts that he submitted the March 20, 2011 grievance through institutional mail but that he did not receive a response. Plaintiff also states that he wrote a letter to a grievance officer on June 20, 2011, the "Warden" on September 20, 2011, and Director Salvadore Godinez on December 20, 2011 inquiring about the March 20, 2011

---

[2] The Screening Order lists the relevant time period as February 24, 2012 to March 20, 2012. However the Complaint states that the events took place on February 24, 2011, February 27, 2011, March 1, 2011, and March 20, 2011 (Doc. 1, p. 5).

[3] Plaintiff also alleged that these Defendants harassed him in other ways including publishing his social security number, implying that he was involved in illegal activity, and broadcasting private conversation.

grievance but that he did not receive a response from anyone (*Id.* 10-12).[4] In various (unsigned) affidavits Plaintiff avers that he "served" the March 20, 2011 grievance to "Internal Affairs" (Doc. 44, p. 6), to the "Warden of Operations John Doe" (*Id.* 7), to "Chief Investigator in Springfield" (*Id.* 8), and to Director Godinez (*Id.* 9) by either institutional or regular mail on March 20, 2011.

The purported March 20, 2011 grievance also is attached to Plaintiff's response. This grievance states that on March 20, 2011 Plaintiff was accosted by his cellmate who wanted to "fool around." Plaintiff said no and informed Defendant Childers of his cellmate's actions. Plaintiff states that Defendant Childers failed to report the event. Plaintiff also informed Defendant Valdez and Lt. Ventures Jackson about the incident. Plaintiff then states that Jackson gestured to Valdez and Childers to "stand by and lookout as security to give me an opportunity to defend myself from the sexual predator I'm not responsible for the actions of other inmates and staff." Plaintiff also wrote letters to others who failed to investigate the incident (Doc. 44, p. 17). There is no mention in this grievance of Defendants Arnez, Thornton, Schuler, Dubin, or Davies. There are no statements in this grievance that any Defendants threatened Plaintiff or any mention of gangs, weapons, or phone calls: Plaintiff merely alleged Defendants Childers and Valdez stood by, upon the direction of Lt. Jackson, while he fought his cell mate and that other correctional officers (who are not a party to this lawsuit) failed to investigate his claims. For relief, Plaintiff sought expungement of a disciplinary record related to the incident (presumably, Plaintiff was written up for fighting).

As revealed at the hearing, the March 20, 2011 grievance was written on a form that was

---

[4] Plaintiff also has provided unsigned affidavits that he sent these letters through institutional or regular mail along with the March 20, 2011 grievance on the dates identified (Doc. 44, p. 13-15).

not in use until August, 2012.  Therefore, Plaintiff could not have written the grievance dated March 20, 2011 on March 20, 2011.  The Court further notes that the grievance itself appears to be altered: on the lines containing the date, the "facility where the grievance issued occurred," and the lines after the check box for "Disciplinary Report," it appears that some writing has been erased or written over.  Plaintiff offers no explanation for these discrepancies.  There is no response to this grievance by a grievance officer or any other administrative official.

In an affidavit and by testimony, Gina Allen, who is the Chairperson of the Administrative Review Board, indicates that the Administrative Review Board received a February 13, 2012 grievance that concerned a disciplinary report dated March 20, 2011.  The grievance was returned to Plaintiff as untimely.  This grievance is almost identical to the purported March 20, 2011 grievance in that it outlines Plaintiff's cellmate's actions, stated that Plaintiff informed Defendant Childers, that Childers did nothing, that Childers, Valdez, and Jackson "stood by door of cell and in a way served as lookout and security which gave me a opportunity to defend myself from the sexual predator . . ." (Doc. 37-1, p. 8).  For relief, Plaintiff requested expungement of the ticket he received and restoration of certain privileges.

The Court finds that Plaintiff is not credible.  He has provided a March 20, 2011 grievance that is on a form that was not available until August, 2012.  The grievance also appears to be altered – dates and locations have been erased and replaced with the dates and locations that are relevant to Plaintiff's claims in this lawsuit.  This Court also finds that Plaintiff offers no explanation for these discrepancies and otherwise presented testimony that was not credible.  Therefore, this Court finds that Plaintiff did not submit the grievance dated March 20, 2011 to prison officials.

**CONCLUSIONS OF LAW**

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §

504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Plaintiff did not submit a grievance to prison officials in a timely manner. The purported

March 20, 2011 grievance is written on a form that was not available to Plaintiff until August, 2012. Therefore, the document attached to Plaintiff's Complaint is not a true and accurate photocopy of the grievance that Plaintiff supposedly submitted on that date, a direct contravention of the statements made in his response and the "affidavits" attached to his response. This Court further finds that Plaintiff is not credible in his statements that he submitted the grievance through institutional mail. Plaintiff has provided "affidavits" which purport to show that he mailed the grievance to 4 individuals other than the correct recipient, the Warden of Big Muddy. Such actions are not required by the grievance procedure and appear merely be an attempt to bolster the claim that he did submit a timely grievance. The second grievance, dated February 13, 2012, is clearly untimely. Finally, the grievances do not implicate any Defendant except Childers and Valdez and only state that they stood by while he fought with his cellmate. The grievances do not contain any indication of threats nor did Plaintiff seek any remedy against the actions of Defendants.

### RECOMMENDATIONS

For the foregoing reasons, this Court **RECOMMENDS** that the Motion for Summary Judgment on the Issue of Exhaustion be **GRANTED**, that summary judgment be granted in favor of Defendants Childers, Durbin, Schuler, Thornton and Valdez and against Plaintiff, and that the Court adopt the foregoing findings of fact and conclusions of law.[5]

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The

---

[5] The remaining Defendants are Clark, Arnez, and Davies. These Defendants have not been served; however, an Order on the pending Motion to Amend the Complaint (Doc. 50) will issue shortly.

failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: December 11, 2013**

                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**